## HUGHES, Adm'r v. PIKE.

Adams obtained a decree in chancery for the payment of money, or in default thereof, for the sale of lands. Afterwards, without payment, on supposed equitable grounds, by agreement with the judgment debtor and by consent of the Probate Court, an order was made in the Probate Court directing the administrator to enter satisfaction of the decree on the chancery record, and releasing him, as such administrator from responsibility for the amount of the decree. On application of administrator *de bonis non*, to enforce the decree; *Held*, That the Probate Court had no authority to make such order, and the administrator was accountable for the amount of the decree.

APPEAL FROM MONROE CIRCUIT COURT.

Hon. John E. Bennett, *Circuit Judge.*

*J. E. Palmer*, for appellant.

It is well settled that " an agreement without consideration is utterly void." *Story on Contracts, Sec.* 427; *Chitty on Contracts,* 26, 27; *Parsons on Contracts,* 853; *Ib. note b. c. to page* 355; *Hill vs. Roderick,* 4 *Watts & Serg.* 221 ; *Railroad vs. Brinkerhoff.* 21, 139 *Wend.*; *Underwood vs. Mulligan,* 10 *Ark.,* 254; *Bomeford vs. Grimes,* 17 *Ark.,* 567 ; 19 *Ark.,* 67.

A fact which has been directly tried and decided by a court of competent jurisdiction, cannot be contested again between the same parties, in the same or any other court. *Hopkins vs. Lee,* 6 *Wheaton,* 109; *Voorhees vs. Bank U. S.,* 10 *Peters,* 449. How does appellee make himself a party to the order of the Probate Court, so as to bring himself within the rule, or reason of the rule? There were no facts to be tried, there was but one party, and there was no one bound by the decision of the court. There was no *res judicata.*

The doctrine of estoppel does not apply to this case. *Steph. Pl.* 238; *Co. Litt.,* 352, *a;* 3 *Blk., Com.,* 303; 1 *Serg. & R.* 444.

*English, Gantt & English,* for Appellee.

*First.* The validity of the contract having been submitted to the court for arbitration, its award was binding. *Coffin vs. Cotton,* 4 *Pick,* 454; *Bean vs. Farman,* 6 *Pick,* 269; *Alling vs. Monson,* 2 *Conn.,* 692.

*Second.* The Probate Court had jurisdiction of the subject matter submitted, and its decision was in the nature of a final judgment and valid; and if erroneous, the error could not be corrected in a collateral proceeding, but only by appeal. *Sturdy and wife vs. Jacoway,* 19 *Ark.,* 514; *Fleming vs. Johnson et al.,* 26 *Ark.,* 421.

*Third.* A waiver or compromise of litigation is a good consideration for a contract. 1 *Pars. Cont'r., p.* 140–44.

GREGG, J.—It appears of record, that at the September term, 1867, an administratrix of the estate of William Harvick, obtained a decree for the payment of six hundred dollars and the foreclosure of a mortgage, on certain real estate, made to secure the payment of the writing obligatory for that sum.

The decree was very irregular; it is in form final, yet it requires a further report to be made, and it fails to describe the lands ordered sold, etc., but sufficient appears to show the determination of the court.

At the November term, 1870, the appellant, as administra-

tor *de bonis non* of said estate, appeared and filed his application to have the decree enforced, showing that it was in no way satisfied, etc. The appellee was notified, and he appeared and resisted the enforcement of the decree, and showed that in 1868 he told the appellant that if he did not abandon said decree and have it satisfied, he would have him enjoined from enforcing it, and that appellant said he would satisfy the decree if the Probate Court would authorize him so to do, and relieve him from liability; that his "object was simply to discharge his duty in the premises."

That the appellant, in person, went before the Probate Court and represented that the decree had not been paid off, and that the new Constitution of Arkansas prohibited the collection of notes, judgments or decrees, wherein the consideration was the sale of slave property, and asked for an order directing what to do. And, by consent of the court, in his own handwriting, entered up an order directing himself to enter satisfaction of said decree on the chancery record of the county, and releasing him from all responsibility, as such administrator, for the amount of the decree.

The matter being thus presented to the court, the chancellor refused the application, and adjudged that the appellant was barred from further proceeding on said decree, and that he pay costs. From which, the administrator has appealed to this court.

The question now is, whether the action of the appellant, as such administrator, and of the Probate Court, amounted to a satisfaction of the decree, or estopped the administrator from further claim thereto?

It is clear there was no defense, in law, sufficient to deprive the heirs of Harvick of their right to the amount of this decree, and it is quite clear from the record, that the administrator was not faithfully discharging his trust. It was far from his duty to be petitioning the Probate Court in a manner that amounted to about the same as asking that the decree be released to the appellee. And if this sum had been lost

to the estate, when he was sanctioning and conniving at such proceedings, he certainly ought to have been held personally liable therefor. But we are of opinion that his promise to enter satisfaction of the decree, even under the sanction of an order of the Probate Court, was no satisfaction. Had he improperly procured such order, and released the decree, he would have been liable to the estate; if the court had made such order without his procurement, it would have been without authority of law, and he was not bound to obey it. It would, in fact, have been his duty to disobey it, and it was and is his duty to be vigilant in collecting and taking care of the estate, and not to barely perform such duties as the law forced him to do, as his own language intimates. This proceeding, therefore, was not a satisfaction of the decree, nor was the Probate Court, as contended for, an arbitrator between the parties.

No award was made and no judgment sought of any competent court. The appearance before the Probate Court was *ex parte*, and to ascertain if that court would order the administrator to satisfy a decree in chancery, by which both appellee and appellant were to be discharged from responsibility at the cost of the estate. While it is clear that the administrator had no right to give away or thus waste the assets of the estate, it is equally true that the Probate Court had no authority to require him to do so; and certainly no power to adjudicate upon the validity of the decree in chancery, and any promise the administrator may have made to cancel that decree, was not only wanting in consideration, but was without authority in law to bind him, and in violation of his duty as such trustee. A mere offer to perform, what another may consider just between disputants, is no sufficient consideration, in law, to compel an individual to abide such finding; much clearer is it insufficient to compel a trustee to misapply or waste the *cestui que trust's* estate.

In the case of *Underwood vs. Milligan*, this court said: "As Marshall had no power, as administrator, to enlarge the lia-

bility of his intestate, or bind the assets in his hands by any agreement of his, the proof of this agreement did not establish the account sought to be recovered of Milligan, as administrator *de bonis non*," etc., 10 *Ark.*, 256.

We are of the opinion that the decree was not satisfied; that there was no judgment vacating it; that Hughes' promise, as administrator, to satisfy the decree, was without consideration, contrary to his duty and void; that he, as such administrator, should be charged with the amount of the decree; that the Chancery Court erred in overruling the application to have said decree enforced. Its order and decree is therefore reversed, and the cause remanded, with directions to refer the matter to a master, and ascertain the amount due upon the original decree in favor of said estate, and order the same paid by a day certain, and in default thereof, that the lands referred to, in the decree, be sold to satisfy such demand.